UNITED STATES DISTRICT COURT         SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| American National County Mutual Insurance Company, | § § § | |
| Plaintiff, | § § § | |
| versus | § § | Civil Action H-09-340 |
| Travelers Indemnity Company of Connecticut, | § § § | |
| Defendant. | § § | |

## Opinion on Summary Judgment

1.   *Introduction.*

A driver was sued over a car accident. Two insurers covered him. The primary carrier paid the driver's defense costs and seeks partial reimbursement from the excess carrier. The excess carrier owes nothing for the driver's defense.

2.   *Background.*

Earl Wingerter crashed his car into another, killing one person and injuring four. The survivors sued Wingerter. His automobile insurer — American National County Mutual Insurance Company — paid to defend him.

The survivors also sued Wingerter's employer, Maersk Equipment Services, because Wingerter was driving home from a company event when he wrecked his car. Travelers Indemnity Company of Connecticut insured Maersk, and its policy also covered Wingerter's car while he was using it for company business.

Travelers paid nothing to defend Wingerter, saying it owed him nothing until American exhausted its policy limits. American says that Travelers was obligated to pay some of Wingerter's defense costs.

3.    *The Policies.*

Both policies cover Wingerter, but they differ on the effect of dual coverage. American's policy requires pro-rata sharing when parallel coverage exists: "If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."

Travelers' policy becomes excess when other-insurance exists: "For any covered auto you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." In the policy, "you" means Maersk, the named insured.

4.    *Travelers' Liability.*

American says that Wingerter had two primary policies — its own and Travelers' — and that he received less coverage from the combined policies than from one alone. If American were correct, Texas law would require the court to ignore the policy language and prorate defense costs. *Hardware Dealers Mutual Fire Ins. Co. v. Farmers Ins. Exchange*, 444 S.W.2d 583, 590 (Tex. 1969) (The policies must be prorated because applying excess and escape clauses would void coverage. In contrast, under either policy alone, coverage would be had.)

Here, the policies did not reduce Wingerter's coverage; they stacked to increase it. American had to pay its full share unless other liability insurance activated its pro-rata clause. When the accident victims sued Wingerter, Travelers' policy did not apply. It only covered Maersk employees' cars after "other collectible insurance," here American's primary policy, was exhausted. Once American exceeded its policy limit, however, Travelers fully covered Wingerter's remaining settlement costs.

Even though the clauses harmonize to give the full effect to the coverage each policy undertook, American says that excess and pro rata clauses inherently contradict each other and require judicial intervention. In examining the complete language of both policies, however, the parties' intent is discernable. American could have contracted with Wingerter for whatever other-insurance terms it desired, but it chose pro-rata terms that do not encompass excess policies. *See Jones v. Medox*, 430 A.2d 488, 492-94 (D.C. 1981).

American relies on a case that discusses equitable proration when other-insurance clauses conflict. The holding in that case did not reach defense costs. The court ruled that, for purposes of settlement costs, one's policy pro-rata clause contradicted a second policy's other-insurance clause — which the court casually called both escape and excess. In fact, the second

- 2 -

policy's other-insurance clause was hybrid.  For liability coverage, the second policy became excess if other insurance applied.  For defense costs, the second policy contained an escape clause:  It paid no defense costs if another carrier was obligated to defend the insured.  *Royal Ins Co. of America v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 640-41, 641 n.2, 644 (5th Cir. 2004).  That differs from the dispute between American and Travelers.

When two car-insurance policies cover the same accident, Texas courts find no conflict between one policy's excess clause and another's pro-rata clause.  Texas courts do not equitably prorate defense costs.  Instead, they respect the contracts and enforce the excess clause.  *See, e.g., Snyder v. Allstate Ins. Co.*, 485 S.W.2d 769 (Tex. 1972); *Great American Indemnity Co. v. McMenamin*, 134 S.W.2d 734, 737 (Tex. Civ. App. 1939).  Besides being Texas law, it is a sound rule; equity does not require gratuitous expansion of contractual responsibilities.

The policies here are clear:  American is primary and Travelers is excess.

5.    *Duty to Defend.*

American says that Travelers, even as an excess carrier, had to help defend Wingerter because the people suing him were likely to recover more than American's policy limit of $500,000.

Under Texas law, however, Travelers owed nothing until American, as the primary carrier, actually paid $500,000.  American paid when it settled with the victims of Wingerter's accident.  This payment triggered Travelers' policy — after Wingerter's defense was over.  Excess insurance does not apply until primary coverage has fully performed; this rule reflects what all parties to both policies would reasonably expect based on the distinctive risks each carrier contracts to cover.  *Keck, Mahin & Cate v. National Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 700 (Tex. 2000) (commercial umbrella policy).



6.    *Conclusion.*

American's motion for summary judgment will be denied, and Travelers' will be granted.  Travelers will owe nothing to American for Wingerter's defense costs.

Signed on June 22, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge